Kavon Adli (SBN 203040)
kavon@tilg.us
David Newman (SBN 246351)
david@tilg.us
THE INTERNET LAW GROUP
9100 Wilshire Blvd., Suite 725E
Beverly Hills, CA 90212
Telephone: (310) 910-1496

Joseph J. Zito (to be admitted *pro hac vice*)
*jzito@whitestone.law*
WHITESTONE LAW
1850 Tower Crescent Plaza, Suite 550
Tysons, Virginia 22182
Telephone: 202-466-3500

Attorneys for Plaintiff
ULRICH BOCKELMANN

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULRICH BOCKELMANN, an individual,<br><br>     Plaintiff,<br><br>v.<br><br>THERMO FISHER SCIENTIFIC, INC., a California Corporation; LIFE TECHNOLOGIES CORPORATION, a California Corporation; and DOES 1 through 10,<br><br>     Defendants. | Case No.: **'23CV2161 AGS BLM**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiff Ulrich Bockelmann alleges as follows for its Complaint against defendants Thermo Fisher Scientific, Inc. and Life Technologies Corporation.

## THE NATURE OF THIS ACTION

1.  Plaintiff brings this action against Thermo Fisher and Life Technologies pursuant to 35 U.S.C. §101 et. seq. and §§ 271, 281, 283, 284, & 285 inclusive, for infringement of one or more claims of U.S. Patent No. 7,993,825 ("the '825 Patent") titled "Detection of Molecular Probes Fixed to an Active Zone of a Sensor" and U.S. Patent No. 7,908,088 (the '088 Patent) titled "Method for Electronically Detecting at Least One Specific Interaction Between Probe Molecules and Target Biomolecules." The '825 and '088 patents protect the inventions of Plaintiff in the area of DNA detection. Defendants have been made aware of the Patents-in-Suit but have continued to infringe and have refused to cease its infringing actions, thereby necessitating this lawsuit.

## THE PARTIES

2.     Plaintiff Ulrich Bockelmann is a German Citizen living in France. Mr. Bockelmann was one of the named inventors of the Patent-in-Suit and is the current sole owner of both patents by assignment.

3.     Defendant Thermo Fisher Scientific, Inc. is the parent company of Defendant Life Technologies Corporation. Defendants manufacture accused machines designed to practice the claimed method.

4.     Defendant Life Technologies Corporation is the successor company to Ion Torrent, which developed the accused machines designed to practice the claimed method.

5.     Defendants, and customers of Defendants, practice the claimed methods of the asserted patents in suit.

## JURISDICTION AND VENUE

6.     This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. §271 et seq.

7.     This Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. §§271, 281 and 28 U.S.C. §§1331 and 1338(a), federal question, and 28 U.S.C. §1332 diversity jurisdiction.

8.     This Court has personal jurisdiction over Defendants because Defendants are located within this judicial district.

9.     Venue is proper in the Southern District of California pursuant to 28 U.S.C. §§1391(b), 1391(c) and 1400(b). Upon information and belief, Defendants are located in and are doing business in this judicial district, have committed acts of infringement and have regular and established places of business in this District and have employees conducting regular and established business in this judicial district.

## BACKGROUND AND GENERAL ALLEGATIONS

10.     Ulrich Bockelmann, Francios Pouthas and Cedric Gentil at the Centre National de la Recherche Scientifique of Paris developed a novel DNA detection process. The process electronically detects interactions between probe molecules, a sensor with an array of field-effect transistors, each having an active zone for interactions to be detected, and target biomolecules by contacting active zones with a probe molecules of a given type, contacting some probe molecules with target biomolecules capable of interacting with the probe molecules in a reaction buffer and measuring a voltage characteristic of one transistor of said array to detect an interaction for a measurement point obtained in a measuring buffer conducted spatially by means of a difference between said measurement point and a reference point for two groups of probe molecules in distinct active Zones.

11.     The Centre National de la Recherche Scientifique of Paris filed two patent applications covering the inventive process to protect the inventions and the significant investment made in the development of the inventions. The '825 patent-in-suit was filed on December 11, 2002, issued on August 9, 2011 and expires on July 1, 2024. The '088

patent-in-suit was filed on July 4, 2003, issued on March 15, 2011 and expires on January 5, 2027. Copies of the patents-in-suit are attached to the Complaint as exhibits.

12.     In 2014, Ulrich Bockelmann formed Ulifetec SAS to commercialize the technology for use in DNA diagnostics. Mr. Brockelmann and his company developed prototypes and lab level machines for implementation of the patented methods. Ulifetec ran laboratory demonstrations, built and tested prototypes, attended conferences and workshops and presented papers.

13.     Ion Torrent technical staff and many executives of Ion Torrent and Life technologies and Therm Fisher attended and presented at the same conferences as Mr. Bockelmann and Ulifetec.

## THE PATENTS

14.     The '825 patent is directed to a method for detection of a parameter of a molecular probe, and contains eighteen claims protecting the invention, Claim one is as follows:

1.  A method for detecting at least one parameter representative of molecular probes fixed to active zones of a sensor, wherein said sensor includes a network of field- effect transistors, each of which has a source region, a drain region, and a gate region which forms one of said active zones on which said representative parameter is detected, the method comprising the following steps:

a)      bringing some of said active zones into contact with molecular probes in order to fix said probes;

b)      bathing at least some of said active zones which have been brought into contact with said molecular probes, in an electrolyte solution;

c)      measuring at least one point of at least one of a drain current, source-gate voltage, and source-drain voltage characteristic of at least two of the field- effect transistors having at least two active zones that are part of said some of active zones, corresponding to a first group, so as to deduce

therefrom said representative parameter by comparison between at least two measurements obtained for two different active zones immerged in said electrolyte solution; and fixing a potential of the electrolyte solution which covers said active zones with an electrode that applies a gate source voltage to the field effect transistors, the electrode being immerged in said electrolyte solution.

15.     The '088 patent is directed to a method for detection of an interaction between a molecular probe and target biomolecules, and contains eighteen claims protecting the invention, Claim one is as follows:

1. A method for electronically detecting at least one specific interaction between probe molecules fixed to at least one active zone of a sensor and target biomolecules, wherein said sensor comprises an array of field-effect transistors, each of which has a source region, a drain region, and a gate region which constitutes an active zone on which said specific interaction is to be detected, and wherein said method comprises:

a)      contacting at least one active zone with a probe molecule of a given type fixed to said active zone,

b)      contacting at least some of the probe molecules with target biomolecules capable of interacting with said probe molecules in a reaction buffer having a first salt concentration,

c)      measuring at least one point of a drain current, a source gate voltage, or a source-drain voltage characteristic of at least one transistor of said array to detect said specific interaction at least for a measurement point obtained in a measuring buffer having a second salt concentration that is lower than the first concentration for probe molecules having been subjected to said specific interaction, said measurement being conducted spatially by means of a difference between said measurement point and a reference point, in

said measuring buffer, for two groups of probe molecules fixed to distinct active zones, the measuring point being obtained for probe molecules having been subjected to the interaction of step b) and the reference point being obtained for probe molecules not having been subjected to the interaction of step b).

## INFRINGEMENT

16. Defendants Thermo Fisher and its subsidiary Life Technologies, the successor to Ion Torrent, manufacture and sell DNA sequencing equipment referred to generally as "Ion Torrent Technology." The Ion Torrent Technology from Thermo Fisher Scientific "takes a unique approach to next-generation sequencing (NGS)." The accused products from Defendants include: "Ion GeneStudio" systems, "Ion GeneStudios S5" systems, "Ion S5" systems, the "Ion Torrent Personal Genome Machine (PGM)" "Ion Chef" systems, "Genexus" systems, Ion Chips, "Ion 530" and "Ion 540" chips, "Ion Torrent Ion CarrierSeq ECS Kits," "Ion Code Barcode Adaptors."

17. Defendants' products alone and in combinations, infringe the '882 and '088 Patents-in-Suit.

18. Defendants were placed on notice of the '088 and '825 Patents in 2023.

19. Plaintiff has conducted a detailed analysis, establishing and confirming that the methods performed when using Defendants products according to Defendants' instructions for operation, infringe claims of the '825 and '088 Patents.

20. Attached as an Exhibit to the Complaint is claim chart demonstrating the correspondence of the operation of the accused products with elements of claims of the '088 and '825 patents.

21. Plaintiff has attempted to engage in discussions with Defendants but Defendants have declined further discussion.

22. Defendants and their customers have continued infringement.

23.     The accused products listed above are used to perform methods for detecting molecular probes fixed to an active zone of a sensor, the devices are specifically sold for DNA sequencing: "First, extract and purify the DNA and/or RNA, depending on the assay. Using PCR, amplify regions of interest to generate an amplicon sequencing library." "the library is settled onto a solid substrate and further amplified. For Ion Torrent™ technology, the substrate is a semi-conductor microchip [active zones] that enables the sequence of each amplicon in the library to be read independently." The solid state substrate used by Defendants is a network of field-effect transistors, each of which has a source region, a drain region, and a gate region forming active zones, "The ion chip contains ion-sensitive, field-effect transistor-based sensors in perfect register with 1.2 million wells, which provide confinement . . . our proprietary sensors . . . beneath the well measure the change in pH and convert it to voltage." " A CMOS integrated circuit for sequencing We have developed a simple, scalable ISFET sensor architecture using electronic addressing common in modern CMOS imagers (Supplementary Fig. 2). Our integrated circuit consists of a large array of sensor elements, each with a single floating gate connected to an underlying ISFET (Fig. 1a). For sequence confinement we rely on a 3.5-mm-diameter well formed by adding a 3-mm-thick dielectric layer over the electronics and etching to the sensor plate (Fig. 1b)." In use, to a) contact the active zones with molecular probes; the amplicons are dropped into wells "These beads then flow across the chip, each depositing into a well (Figure 2.1)." The b) actives zones are bathed in an electrolyte solution; "The Ion Torrent™ next-generation sequencer then sequentially floods the chip with nucleotides to initiate base calling." Then, c) a current/voltage characteristic of at least two active zones is measured to deduce a representative parameter by comparison between at least two measurements obtained for two different active zones; and ". . . If a nucleotide is added to a DNA template and is then incorporated into a strand of DNA, a hydrogen ion will be released. The charge from that ion will change the pH of the solution in the well. Our proprietary ion sensors

beneath the well measure the change in pH and convert it to voltage. In essence, each well works as the world's smallest pH meter." . . . "Figure S11 Physical model a, The physical model of the well relates the measured signal in wells containing beads (Sb) and empty wells (Se) to the flux of protons between those wells and the bulk fluid as well as the flux of protons generated by the incorporation reaction in the bead-containing wells." The field effect transistors used by Defendants rely on an electrode to fix a potential of the electrolyte solution, that applies a gate source voltage to the field effect transistors. "The pH-ISFET sensor system consists of a reference electrode and an ISFET device, where the reference electrode provides a constant reference potential for the solution. The structure and working principle of a pH-ISFET sensor system are shown in Figure 1a. In the solution, the reference electrode provides a constant reference potential, and a change in the pH value will cause a change in the potential at the interface of the sensitive film."

    With reference to the claims of the '088 patent, the Ion Torrent devices can be utilized for sequencing and hybridization, for microbes, transcriptomes, gene panels, exomes, for specific DNA identification procedures and processes by changing chips, sequencing buffers, reagents, flushing solutions and nucleotides. The Ion Torrent equipment is capable of contacting probe molecules with target biomolecules in a reaction buffer having a first salt concentration, and measuring a current/voltage characteristic to detect a specific interaction in a measuring buffer having a lower salt concentration for probe molecules having been subjected to a specific interaction. The Ion Torrent devices conduct the measurement by means of a difference between a measurement point and a reference point, in said measuring buffer, for two groups of probe molecules in active zones, comparing probe molecules subjected to the interaction and probe molecules not having been subjected to the interaction as a reference point.

    24.    Plaintiff is the owner of the '825 and '088 Patents-in-Suit.

    25.    Defendants have infringed, and continues to infringe, at least claims 1 - 18 of the '825 Patent and claims 1- 17 of the '088, under 35 U.S.C. § 271(a)(b)(c) and (g), by

performing the claimed methods in the United States, by inducing others to perform the claimed methods in the United States, by contributing to the infringement of others and by selling the product of the patented process. Defendants continue to manufacture products used to infringe, continue to sell such equipment inducing and contributing to infringement by others and also continue to perform infringing activity by performing the claimed method in performing gene sequencing in the United States and by continuing to sell the product of the patented process in the United States, which activity infringes claims of the '825 Patent.

26.   The asserted patents are infringed under 35 USC 271(a) when a claimed method is "used" by one or more Defendants to detect molecular probes; the asserted patents are infringed under 271(b) when one or more of the Defendants "induce" others to practice the claimed method; the asserted patents are infringed under 271(c) when one or more of the Defendants provides "apparatus [systems / machines / software / hardware / reagents / solutions, etc.] for use by others in practicing the "patented process," the asserted patents are infringed under 271(g) when one or more of the Defendants "without authority . . . offers to sell, sells, or uses within the United States a product [report, sequencing, analysis, etc.] which is made by the process patented in the United States."

27.   Upon information and belief, Defendants have directly infringed one or more of claims of the '825 and '088 patents under 35 USC §271(a):

"(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent"

by engaging in accused activity which by practicing the claimed method, by performing the recited steps of the claimed method in the United States. Defendants continue to manufacture products used to infringe and continue to perform infringing activity by performing the claimed method in performing gene sequencing in the United

States which infringe claims of the '825 and '088 Patents, including by using the above described Ion Torrent products.

28.    Upon information and belief, Defendants have indirectly infringed one or more of the claims of the '825 and '088 patents under 35 USC §271(b):

"(b) Whoever actively induces infringement of a patent shall be liable as an infringer"

by providing accused products, including the Ion Torrent products with instructions, which are used to practice the patented methods according to the instructions and thereby inducing others to use the products in an infringing manner."

29.    Upon information and belief, Defendants have indirectly infringed one or more of the claims of the '825 and '088 patents under 35 USC §271(c):

(c) Whoever offers to sell or sells within the United States or imports into the United States . . . or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer"

by providing accused products, including the Ion Torrent products, and other components and supplies used in gene sequencing, which are used in practicing a patented process and which are used to practice methods which infringe the claims of the '825 and '088 patents, thus contributing to the infringement of the '825 and '088 patents.

30.    Upon information and belief, Defendants have directly infringed one or more of the claims of the '825 and '088 patents under 35 USC §271(g):

"(g) Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent"

by providing products, such as reports, sequencing, analysis, etc. that are the product of the patented process which infringes the claims of the '825 and '088 patents.

31.     Defendants do not have a license or authority to use the '825 or the '088 Patent.

32.     Defendants have been willfully infringing the '825 and '088 Patents since at least as early as they became aware of the work of Brocelmann and Ulifetec and the '825 and '088 Patents. Upon information and belief, Defendants have no good faith defense to Plaintiff's infringement allegations and have refused to cease selling products or to engage in further attempts to reach a business resolution. Instead, Defendants have intentionally continued their knowing infringement.

33.     As a result of Defendants' infringement of the '825 and '088 Patents, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## CLAIM 1

## LIFE TECHNOLOGIES CORPORATION INFRINGEMENT OF U.S. PATENT NO. 7,993,825

34.     The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

35.     Defendant Life Technologies Corporation has infringed, and continues to directly infringe, at least claims 1 - 18 of the '825 Patent, under 35 U.S.C. § 271(a), by using the Accused Ion Torrent products in the United States to practice the claimed method.

36.     Upon information and belief, Defendant Life Technologies has indirectly infringed one or more of the claims of the '825 patent under 35 USC §271(b) by providing accused products, including the Ion Torrent products with instructions, which are used to practice the patented methods according to the instructions and thereby inducing others to use the products in an infringing manner.

37.     Upon information and belief, Defendant Life Technologies has indirectly infringed one or more of the claims of the '825 patent under 35 USC §271(c) by providing accused products, including the Ion Torrent products, and other components and supplies used in gene sequencing, which are used in practicing a patented process and which are used to practice methods which infringe the claims of the '825 patent, thus contributing to the infringement of the '825 patent.

38.     Upon information and belief, Defendant Life Technologies has directly infringed one or more of the claims of the '825 patent under 35 USC §271(g) by providing products, such as reports, sequencing, analysis, etc. that are the product of the patented process which infringes the claims of the '825 patent.

39.     Life Technologies does not have a license or authority to use the '825 Patent.

40.     As a result of Life Technologies' infringement of the '825 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

# CLAIM 2

## LIFE TECHNOLOGIES INCORPORATION INFRINGEMENT OF U.S. PATENT NO. 7,908,088

41.     The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

42.     Defendant Life Technologies Corporation has infringed, and continues to directly infringe, at least claims 1 - 17 of the '088 Patent, under 35 U.S.C. § 271(a), by using the Accused Ion Torrent products in the United States to practice the claimed method.

43.     Upon information and belief, Defendant Life Technologies has indirectly infringed one or more of the claims of the '088 patent under 35 USC §271(b) by providing accused products, including the Ion Torrent products with instructions, which

are used to practice the patented methods according to the instructions and thereby inducing others to use the products in an infringing manner.

44.    Upon information and belief, Defendant Life Technologies has indirectly infringed one or more of the claims of the '088 patent under 35 USC §271(c) by providing accused products, including the Ion Torrent products, and other components and supplies used in gene sequencing, which are used in practicing a patented process and which are used to practice methods which infringe the claims of the '088 patent, thus contributing to the infringement of the '825 patent.

45.    Upon information and belief, Defendant Life Technologies has directly infringed one or more of the claims of the '088 patent under 35 USC §271(g) by providing products, such as reports, sequencing, analysis, etc. that are the product of the patented process which infringes the claims of the '088 patent.

46.    Life Technologies does not have a license or authority to use the '088 Patent.

47.    As a result of Life Technologies' infringement of the '088 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## CLAIM 3

## THERMO FISHER SCIENTIFIC INC INFRINGEMENT OF U.S. PATENT NO. 7,993,825

48.    The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

49.    Defendant Thermo Fisher has infringed, and continues to directly infringe, at least claims 1 - 18 of the '825 Patent, under 35 U.S.C. § 271(a), by using the Accused Ion Torrent products in the United States to practice the claimed method.

50.    Upon information and belief, Defendant Thermo Fisher has indirectly infringed one or more of the claims of the '825 patent under 35 USC §271(b) by providing accused products, including the Ion Torrent products with instructions, which

are used to practice the patented methods according to the instructions and thereby inducing others to use the products in an infringing manner.

51.     Upon information and belief, Defendant Thermo Fisher has indirectly infringed one or more of the claims of the '825 patent under 35 USC §271(c) by providing accused products, including the Ion Torrent products, and other components and supplies used in gene sequencing, which are used in practicing a patented process and which are used to practice methods which infringe the claims of the '825 patent, thus contributing to the infringement of the '825 patent.

52.     Upon information and belief, Defendant Thermo Fisher has directly infringed one or more of the claims of the '825 patent under 35 USC §271(g) by providing products, such as reports, sequencing, analysis, etc. that are the product of the patented process which infringes the claims of the '825 patent.

53.     Thermo Fisher does not have a license or authority to use the '825 Patent.

54.     As a result of Thermo Fishers' infringement of the '825 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## CLAIM 4

## THERMO FISHER SCIENTIFIC INC INFRINGEMENT OF U.S. PATENT NO. 7,908,088

55.     The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

56.     Defendant Thermo Fisher has infringed, and continues to directly infringe, at least claims 1 - 17 of the '088 Patent, under 35 U.S.C. § 271(a), by using the Accused Ion Torrent products in the United States to practice the claimed method.

57.     Upon information and belief, Defendant Thermo Fisher has indirectly infringed one or more of the claims of the '088 patent under 35 USC §271(b) by providing accused products, including the Ion Torrent products with instructions, which

are used to practice the patented methods according to the instructions and thereby inducing others to use the products in an infringing manner.

58.    Upon information and belief, Defendant Thermo Fisher has indirectly infringed one or more of the claims of the '088 patent under 35 USC §271(c) by providing accused products, including the Ion Torrent products, and other components and supplies used in gene sequencing, which are used in practicing a patented process and which are used to practice methods which infringe the claims of the '088 patent, thus contributing to the infringement of the '825 patent.

59.    Upon information and belief, Defendant Thermo Fisher has directly infringed one or more of the claims of the '088 patent under 35 USC §271(g) by providing products, such as reports, sequencing, analysis, etc. that are the product of the patented process which infringes the claims of the '088 patent.

60.    Thermo Fisher does not have a license or authority to use the '088 Patent.

61.    As a result of Thermo Fisher's infringement of the '088 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## PRAYER FOR RELIEF

A.    For a judgment declaring that Life Technologies has infringed the '825 Patent;

B.    For a judgment declaring that Life Technologies' infringement of the '825 Patent has been willful;

C.    For a judgment declaring that Life Technologies has infringed the '088 Patent;

D.    For a judgment declaring that Life Technologies' infringement of the '088 Patent has been willful;

E.    For a judgment declaring that Thermo Fisher has infringed the '825 Patent;

F.      For a judgment declaring that Thermo Fisher's infringement of the '825 Patent has been willful;

G.      For a judgment declaring that Thermo Fisher has infringed the '088 Patent;

H.      For a judgment declaring that Thermo Fisher's infringement of the '088 Patent has been willful;

I.      For a grant of a permanent injunction pursuant to 35 U.S.C. §283, enjoining each of the Defendants from further acts of infringement;

J.      For a judgment awarding Plaintiff compensatory damages as a result of each Defendants' infringement sufficient to reasonably and entirely compensate Plaintiff for infringement of the '825 and '088 Patents in an amount to be determined at trial;

K.      For a judgment declaring that Defendants' infringement was willful and for enhancement of damages in accordance with 35 U.S.C. 284;

L.      For a judgment declaring that this case is exceptional and awarding Plaintiff its expenses, costs and attorneys' fees in accordance with 35 U.S.C. § 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

M.      For a judgment awarding Plaintiff prejudgment interest pursuant to 35 U.S.C. § 284, and a further award of post judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid;

N.      For a judgment awarding Plaintiff enhanced damages under 35 U.S.C. § 284; and

O.      For such other relief to which Plaintiff is entitled under the applicable United States laws and regulations or as this Court deems just and proper.

Dated: November 22, 2023          THE INTERNET LAW GROUP

By: *s David Newman*
David Newman
Attorneys for Plaintiff ULRICH BOCKELMANN

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues raised by this Complaint.

Dated: November 22, 2023      THE INTERNET LAW GROUP

By: */s David Newman*
David Newman
Attorneys for Plaintiff ULRICH BOCKELMANN